1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   ROSENDO SOTO VALENZUELA,          CASE NO. EDCV 18-1303 SS

12                    Plaintiff,

13        v.                          **MEMORANDUM DECISION AND ORDER**

14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16                    Defendant.

17

18                              **I.**

19                         **INTRODUCTION**

20

21        Rosendo Soto Valenzuela ("Plaintiff") brings this action

22   seeking to overturn the decision of the Acting Commissioner of

23   Social Security (the "Commissioner" or "Agency") denying his

24   application for Disability Insurance Benefits ("DIB").  The parties

25   consented pursuant to 28 U.S.C. § 636(c) to the jurisdiction of

26   the undersigned United States Magistrate Judge.  (Dkt. Nos. 11-

27   13).  For the reasons stated below, the decision of the Commissioner

is REVERSED, and this case is REMANDED for further administrative proceedings consistent with this decision.

## II.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an Administrative Law Judge ("ALJ") conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the grids are inapplicable and the ALJ must take the testimony of a VE. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 22-29). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful since October 14, 2013, the alleged onset date. (AR 24). At step two, the ALJ found that Plaintiff's mild lumbar spondylosis with lumbago and mild degenerative joint disease of the left knee are severe impairments.[1] (AR 24). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 18-19).

---

[1] The ALJ also found that Plaintiff's medically determinable impairments of obstructive sleep apnea, hypertension, diabetes, obesity, and Bell's palsy do not limit Plaintiff more than minimally and are therefore nonsevere. (AR 24-25).

4

The ALJ then assessed Plaintiff's RFC and concluded that he can perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c).[2] (AR 25). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a truck driver, as generally performed in the national and regional economy. (AR 29). Accordingly, the ALJ found that Plaintiff was not under a disability as defined in the Act from October 14, 2013, through the date of the decision. (AR 29).

## IV.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

5

evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

On June 4, 2014, Sohail K. Afra, M.D., performed a complete internal medicine evaluation at the request of the Agency. (AR 594-600). Plaintiff, who Dr. Afra found to be a "reliable" and "credible" historian (AR 594, 596), complained of pain in the mid back, hips, lower back, buttocks, left shoulder, right elbow, and both knees. (AR 595). His primary complaint was chronic severe back pain, with occasional radiation to the lower extremities, and knee pain bilaterally, more pronounced on the left. (AR 595).

On examination, Dr. Afra found reproducible pain in the shoulder, hip, and elbow joints with internal rotation of the shoulder joints painful and decreased. (AR 595, 597, 598). In the dorsolumbar region, moderate tenderness with pain was noted

over the paraspinal areas, with flexion decreased to 40° (normal is 0-90°), extension to 15° (0-25°), lateral bending to 20° (0-25°), and rotation to 20°. (0-30°). (AR 597-98). Dr. Afra noted moderate-to-severe edema of the left knee with range of motion painful and limited to 110-120° (0-150°), with significant crepitus. (AR 595, 598). Because of the left knee pain, flexion of the left hip was painful and decreased to 50° with knees straight (0-70°). (AR 598). With knees flexed, flexion was painful and reduced to 90° (0-100°), internal rotation "very painful" and decreased to 35° (0-40°), and external rotation "very painful" and reduced to 35° (0-50°). (AR 598). Plaintiff's gait was within normal limits but he had difficulty walking on toes or heels. (AR 599).

Dr. Afra assessed chronic low back pain, chronic knee pain bilaterally, with objective evidence of moderate-to-severe swelling of the left knee with painful and limited range of motion and associated muscular atrophy on the left calf, and mechanical-type shoulder pain. (AR 599). Dr. Afra opined that Plaintiff was limited to pushing, pulling, lifting and carrying 20 pounds occasionally and 10 pounds frequently, and walking, sitting, or standing six hours in an eight-hour day. (AR 599-600). Dr. Afra limited Plaintiff to occasional bending, kneeling, stooping, crawling, and crouching. (AR 600). He precluded Plaintiff from walking on uneven terrain, climbing ladders, and working with heights. (AR 600).[3] The state Agency consultants gave Dr. Afra's

_____

[3] If a person of Plaintiff's age (he turned 50 on October 20, 2013), unable to communicate in English (an interpreter was used

opinion "great weight" and concluded that Plaintiff was limited to light work.  (AR 351-52, 360-62).

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b).  The regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [(nonexamining)] physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); accord Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  "The weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'"  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1201 (9th Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Bayliss v. Barnhart,

at the hearing and at Dr. Afra's examination), and with unskilled past relevant work and no transferable skills (AR 342) was limited to light work as Dr. Afra's opinion indicates, he would be found disabled.  See grids Rule 202.09.

427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.; see also Reddick, 157 F.3d at 725 (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

The ALJ gave Dr. Afra's opinion "little weight." (AR 27). He found the opinion to be "inconsistent with the mild and minimal degenerative changes revealed in imaging studies, and with the normal strength, reflexes, gait, coordination, and range of motion [Plaintiff] exhibited in physical examinations." (AR 27) (citations omitted).[4]   Dr. Afra's opinion was contradicted by the opinion of Herman R. Schoene, M.D., who conducted an orthopedic evaluation in October 2016 (AR 769-73).   As Dr. Afra's opinion was contradicted by a later medical evaluation, the ALJ was

---

[4]   The ALJ similarly rejected the opinions expressed by the state Agency consultants, who had given Dr. Afra's opinion "great weight."   (AR 27).

required to give specific and legitimate reasons that are supported by substantial evidence in the record for rejecting Dr. Afra's opinion. See Lester, 81 F.3d at 830-31 ("the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record"). The ALJ's rejection of Dr. Afra's opinion does not satisfy these standards.

First, Dr. Afra's opinion is supported by his own objective examinations. In evaluating a consultative examiner's opinion, the ALJ must consider the extent to which the opinion is supported by clinical and diagnostic examinations in determining the weight to give the opinion. Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). While the ALJ summarized some of Dr. Afra's clinical conclusions (AR 27), the ALJ failed to acknowledge that Plaintiff had painful and limited range of motion in his shoulders, elbows, hips, knees, and lumbar spine (AR 597-98). "[A]n ALJ may not pick and choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant." Cox v. Colvin, 639 F. App'x 476, 477 (9th Cir. 2016) (citing Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014)). Plaintiff's reduced range of motion in both his upper and lower body accompanied with significant pain is consistent with being physically limited to light work, as Dr. Afra (and the state Agency physicians) opined.

Second, the imaging studies cited by the ALJ were neither "mild" nor indicated "minimal" degenerative changes. X-rays of

10

Plaintiff's right knee in October 2015 indicated <u>moderate</u> knee joint effusion. (AR 583-84). Further, while x-rays of Plaintiff's cervical and thoracic spine indicated "degenerative changes," they did not indicate whether the changes were mild, moderate, or severe. (AR 583). Indeed, the ALJ is not qualified to make such a medical assessment on his own. The ALJ's lay opinion of Plaintiff's medical condition cannot provide the medical evidence needed to support the ALJ's RFC determination. <u>See</u> <u>Tackett</u>, 180 F.3d at 1102-03 (there was no medical evidence to support the ALJ's determination); <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record); <u>Rohan v. Chater</u>, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). Similarly, while a May 2014 MRI of Plaintiff's lumbar spine found <u>mild</u> discogenic spondylosis at L4-L5 and L5-S1 and <u>mild</u> facet arthrosis at L5-S1, the same study indicated <u>moderate</u> facet arthrosis at L4-l5. (AR 728; <u>see</u> <u>id.</u> 61-62). The ALJ appears to have substituted his own judgment for that of Dr. Afra's and failed to give specific and legitimate reasons for doing so. The MRI study also found effacements and encroachment of the nerve roots, without indicating whether they were mild, moderate or severe. (AR 728). An August 2016 x-ray of Plaintiff's thoracic spine indicated "<u>moderate</u> degenerative changes at all thoracic levels with marginal spur formation present." (AR 796) (emphasis

added).  Thus, imaging studies indicated more than "mild and minimal" findings and were consistent with Dr. Afra's opinion.[5]

Finally, the physical examinations cited by the decision below were consistent with some of Dr. Afra's findings.  In March 2015, Plaintiff exhibited reduced dorsolumbar range of motion similar to Dr. Afra's assessment.  (Compare AR 597-98, with id. 751).  While Dr. Schoene came to a different conclusion as to Plaintiff's functional abilities, he too found that Plaintiff had limited range of motion in his lumbar spine: lateral flexion limited to 15/25° bilaterally, extension to 10/25°, and forward flexion to 45/90°.  (AR 771).  Further, while physical examinations in October and December 2016 found full range of motion in Plaintiff's neck, the examinations did not assess the range of motion in Plaintiff's lumbar spine.  (AR 829, 835).

Defendant argues that in rejecting the opinions of Dr. Afra and the Agency consultants, the ALJ properly relied on the subsequent orthopedic consultative examination by Dr. Schoene.  (Dkt. No. 24 at 3-7).  Dr. Schoene examined Plaintiff at the request of the Agency on October 18, 2016.  (AR 769-73).  Dr. Schoene found

_____

[5]    Defendant emphasizes that the August 2016 x-ray indicated that "the moderate changes in Plaintiff's spine were 'unremarkable for the patient's age.'"  (Dkt. No. 4 at 5) (quoting AR 796). Nevertheless, "unremarkable" degenerative narrowing of the thoracic spine for an individual of age 52 does not contradict Dr. Afra's clinical findings that Plaintiff had diminished range of motion in his lumbar spine, hips, and knees.  (AR 597-98).  Indeed, while Dr. Afra did not explicitly test Plaintiff's thoracic spine, he found full range of motion in Plaintiff's cervical spine.  (AR 597).

full range of motion in Plaintiff's neck, shoulders, elbows, wrists, hands, hips, ankles, and knees. (AR 771-72). Nevertheless, as noted above, Plaintiff displayed reduced range of motion in his back that was consistent with Dr. Afra's findings. (Compare AR 771, with id. 597-98). Dr. Schoene opined that Plaintiff can lift/carry 50 pounds occasionally and 25 pounds frequently and can stand, walk, or sit six hours in an eight-hour workday. (AR 772).

The ALJ gave Dr. Schoene's opinion "great weight," finding it consistent with the "normal" x-ray performed by Schoene, the "very conservative" course of treatment, and the "normal" physical examinations. (AR 28). The ALJ's assessment is not supported by substantial evidence. First, as discussed above, imaging studies and physical examinations were not "normal." While Dr. Schoene indicated that he "obtained x-rays of the lumbosacral spine, and these are normal" (AR 772), the x-ray results were not included in the record. Plaintiff objected to Dr. Schoene's report, requesting that the ALJ obtain a copy of the x-rays, if they in fact exist. (AR 323-24). The ALJ acknowledged the objection, stating he would investigate and issue a ruling (AR 324), but the ALJ's decision was issued without the ALJ ruling on this particular issue. Further calling into doubt the existence of the normal x-rays, just two months prior to Dr. Schoene's examination, x-rays of Plaintiff's lumbar spine indicated hypertrophic degenerative changes at multiple lumbar levels and arthritic disease of facet joints at all levels. (AR 797). Finally, the decision below erred in concluding that Plaintiff's care was conservative. Plaintiff was

treated for his chronic back and joint pain with epidural steroid injections and hydrocodone.[6]  (AR 732, 861).  The consistent use of hydrocodone, a strong opioid medication, and epidural injections cannot fairly be described as "conservative" treatment.  See Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative); Madrigal v. Berryhill, No. CV 17 0824, 2017 WL 5633028, at *6 (C.D. Cal. Nov. 21, 2017) ("[P]laintiff has been prescribed strong prescription pain medications, including the narcotic medication Norco, has received spinal injections, and has been referred for a lap band surgery consultation, treatment that is not necessarily conservative.").  Thus, the ALJ's determination that Dr. Schoene's opinion is due great weight is not supported by substantial evidence.

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Afra's opinion.  On remand, the ALJ shall reevaluate the weight to be afforded Dr. Afra's opinion.[7]

---

[6]    Hydrocodone is "an opioid used to treat severe pain of a prolonged duration."  <https://en.wikipedia.org/wiki/Hydrocodone> (last visited April 29, 2019).

[7]    Plaintiff also argues that the ALJ erred in rejecting his subjective symptoms.  (Dkt. No. 21 at 12-17).  However, it is unnecessary to reach Plaintiff's arguments on this ground, as the matter is remanded for the alternative reasons discussed at length in this Order.

## VI.

## CONCLUSION


    Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.


DATED:  May 1, 2019


                                    /S/
                          _____
                          SUZANNE H. SEGAL
                          UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**